STATE OF NEBRASKA, APPELLEE, V. MARLIN E. MEYER, APPELLANT.
460 N.W.2d 656

Filed September 28, 1990.   No. 89-1238.

Lance J. Johnson for appellant.

Robert M. Spire, Attorney General, and Terri M. Weeks for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Defendant-appellant, Marlin E. Meyer, was, pursuant to verdict, adjudged guilty of failing to support his minor son, in violation of Neb. Rev. Stat. § 28-706(1) (Reissue 1989), which provides, in relevant part, that one "who intentionally fails, refuses, or neglects to provide proper support which he or she knows or reasonably should know he or she is legally obliged to provide to a . . . minor child . . . commits criminal nonsupport." In seeking to overturn his conviction Meyer asserts, in summary, that the district court erred in (1) excluding certain evidence, (2) finding the evidence sufficient to support the verdict, and (3) failing to instruct the jury as he requested. The summarized errors being without merit, we affirm.

Meyer's marriage to the mother of the child in question was dissolved on June 12, 1985. The dissolution decree orders, in

accordance with the parties' settlement agreement, that Meyer pay the mother $222 per month for the support of the subject child until sale of the former family home and sets Meyer's child support obligation thereafter at $200 per month. The agreement, which is incorporated into the decree, specifically notes that the amount of the child support initially ordered was equal to the monthly payment due the holder of the mortgage on the home and that it was set at that amount to enable the mother to make the mortgage payments. The agreement also permits the mother to occupy the property until June 1, 1988, gives each party 30 days thereafter within which to purchase the property by paying the other party one-half of the assessed value of the property, and provides that if neither party purchases the other's interest, the property be otherwise sold by the end of 1988 and the proceeds divided equally between the parties. The agreement requires the mother to make the mortgage payments, pay all taxes and insurance premiums relating to the property, and hold Meyer harmless on those obligations.

Meyer admits that he is in arrears in his child support obligation. The records of the clerk of the district court reveal that Meyer made regular payments through that office until May 1986, when he made no payment. He thereafter made a payment of $100 in both June and July 1986 and has since made no payment through that office.

The mother testified that she made the mortgage payments until shortly before she left the property in September 1986. No further payments having been made, the mortgage became delinquent, and sometime during the last quarter of 1986 Meyer and the mother, without the exchange of money, conveyed the property to the mortgage holder.

Regarding the first summarized assignment of error, Meyer urges that by refusing to receive evidence concerning the "circumstances surrounding the condition of or sale of the . . . former residence; the treatment of [the child] by [the mother] and her [three] sons [by a former marriage]; or the circumstances surrounding [a certain] juvenile court proceeding," brief for appellant at 5, the district court deprived Meyer of the opportunity to establish that his failure to support

his son was not intentional. In fact, however, the district court did receive some evidence on those matters.

Meyer and the mother both testified as to the delinquency of the mortgage payments and the voluntary conveyance of the property to the mortgagee, and Meyer testified both that the property had been damaged during the mother's occupancy and that the mortgage holder acquired the property for the amount remaining due on the mortgage, which was less than the value of the property. Although the child denied it, Meyer testified that his son was mistreated by the mother and her three other sons. The record also establishes that juvenile court proceedings were instituted because the child had run away from his mother's home and that, as a consequence, he was placed in foster care. In addition, Meyer testified that he chose not to make the ordered child support payments because the money was not being used to care for his son or to make the mortgage payments and because after the child was placed in foster care, the mother no longer had possession of him, and that Meyer made one $222 payment to one of the foster care givers.

In any event, the evidence with which Meyer is here concerned does not bear on whether he intended to not make the ordered support payments. In the context of a criminal statute, that which is done willfully or purposefully rather than accidentally or involuntarily is done intentionally; being a state of mind, the intent operative at the time of an action may be inferred from the words and acts of an accused and from the facts and circumstances surrounding the conduct. *State v. Kipf,* 234 Neb. 227, 450 N.W.2d 397 (1990). Meyer does not claim that he accidentally or involuntarily neglected to make the payments; rather, he professes to have had good reasons for willfully and purposefully refraining from so doing. Thus, in this summarized assignment of error he is concerned not with his intent, but with his motives for knowingly refraining from doing that which he was ordered to do. The evidence with which he is concerned may, in Meyer's own mind, explain why he chose to act as he did, but it does not negate his intent to so act.

Contrary to the claim made in the second summarized assignment of error, the evidence adduced by the

plaintiff-appellee State is sufficient to support the verdict. It is clear from the State's evidence that the child in question is a minor. It may also be inferred that Meyer knew what the dissolution decree required of him in regard to child support. Not only did he sign the agreement which the decree incorporates, but he fulfilled his child support obligation in accordance with the terms of the decree for almost a year. Indeed, he testified that he stopped making the required payments because the mother stopped making the mortgage payments and because the child had been placed in foster care, not that he did not know what his obligation was. What he did not do was ask the court for relief because of the mother's failure to make the mortgage payments or the child's placement in foster care. The State also adduced evidence from which the jury could conclude that during at least part of the relevant time, Meyer had assets from which to make the ordered payments and has always had the ability to earn sufficient income as would enable him to fulfill his obligation.

We thus reach the third summarized assignment of error, regarding which Meyer asserts the district court should have instructed the jury that its verdict would not affect "any existing financial obligation for child support" he owed. Meyer urges that without such an instruction the jury could conclude that a not guilty verdict would erase his child support obligation. In an effort to support that argument, Meyer states that in connection with his new trial motion the affidavit of a juror was introduced in evidence which states that this very concern was a factor in the jury's determination.

There are at least three difficulties with this argument. The first is that notwithstanding Meyer's direction that the bill of exceptions contain "any and all evidence offered at trial or at any hearing in this matter," the bill of exceptions presented to us neither indexes any hearing on the motion for new trial the transcript shows Meyer filed nor contains any evidence which may have been received at any such hearing. (In fairness, it must also be noted that if Meyer had complied with requirements of Neb. Ct. R. of Prac. 9C(3) and 9D(1)f (rev. 1989) in the preparation of his brief and attempted to tell us where in the bill of exceptions the affidavit could be found, he

would have discovered that he was seeking consideration of a document not before us.)

The second difficulty is that while under our law a juror's affidavit may be used to show that in reaching its verdict the jury considered prejudicial information emanating from a source other than the evidence presented at trial, such an affidavit may not be used to show a jury's misunderstanding of the law as such misunderstanding inheres in the verdict. *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987). See, also, *State v. Trevino,* 230 Neb. 494, 432 N.W.2d 503 (1988); *State v. McDonald,* 230 Neb. 85, 430 N.W.2d 282 (1988); *State v. Roberts,* 227 Neb. 489, 418 N.W.2d 246 (1988); *Simants v. State,* 202 Neb. 828, 277 N.W.2d 217 (1979); Neb. Rev. Stat. § 27-606(2) (Reissue 1989).

The third difficulty is that the requested instruction had nothing to do with the issues presented by the charge and thus had nothing to do with the law of the case. While it is a trial court's duty to properly instruct a jury on the law applicable to the case, *State v. Gorman,* 232 Neb. 738, 441 N.W.2d 896 (1989), it cannot be expected to instruct as to all matters jurors might wonder about at some point in their deliberations.

AFFIRMED.