STATE OF NEBRASKA, APPELLEE, V. WILLIAM BECK, APPELLANT.
471 N.W.2d 128'

Filed June 21, 1991.   No. 90-408.

James H. Truell for appellant.

Robert M. Spire, Attorney General, and Elaine A. Chapman for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

William Beck appeals his York County District Court convictions for criminal nonsupport, in violation of Neb. Rev. Stat. § 28-706(1) (Reissue 1989). He was sentenced to a total of 40 to 120 months in prison and was ordered to pay restitution of $11,008. We affirm the convictions, but modify the order of restitution.

The defendant-appellant is the father of Billi Jo Beck, who was born on February 18, 1975. The decree of dissolution of marriage, entered on November 4, 1976, placed legal custody of the child in the court and awarded physical custody to Beck's former wife, now Connie Tyrrell. Beck was ordered to pay $75 each month in child support. Since 1976, only two support payments, both unemployment intercepts in 1984, were received by the clerk of the district court.

The information charging Beck with seven counts of

criminal nonsupport for the months of May through November 1989 was filed on January 5, 1990. At arraignment Beck stood mute, and not guilty pleas were entered for him. After waiving his right to a jury trial, Beck was found guilty of all seven counts following a bench trial. The trial court sentenced him to 20 to 60 months' imprisonment on each count, with six sentences to run concurrently and one to run consecutively. He was ordered to pay $11,008 in restitution, which was apparently the full amount of back child support owed by him. His motion for new trial was overruled, and this appeal followed.

Beck's assignments of error combine to assert that the trial court abused its discretion in failing to allow the taking of depositions and the admission of certain evidence which would support his defense, in sentencing the defendant to incarceration, and in ordering restitution beyond that charged in the information. Beck's asserted defense is that he did not violate the statute because he believed that he was not required to pay child support when his rights to visitation had been limited by his ex-wife.

The criminal nonsupport statute provides:

> (1) Any person who intentionally fails, refuses, or neglects to provide proper support which he or she knows or reasonably should know he or she is legally obliged to provide to a spouse, minor child, minor stepchild, or other dependent commits criminal nonsupport.
>
> . . . .
>
> (7) Criminal nonsupport is a Class IV felony if it is in violation of any order of any court.

§ 28-706.

Beck attempted to show at trial that he did not violate the statute because he lacked the necessary intent. Instead, he asserted that he failed to pay support because he believed the decree of dissolution linked the child support payments with his visitation rights and that when visitation was denied, he believed he was no longer required to pay child support. At no time does Beck deny that he failed to make any payment toward child support in more than 14 years. On appeal, he argues that he should have been allowed to present evidence of his state of mind as an explanation for that failure. We disagree.

The nonsupport statute requires that the person charged must have intentionally failed to provide support which he knows or reasonably should know he is legally obliged to provide. Through an offer of proof, Beck stated that he would testify to his belief that the wording of the divorce decree allowed him to stop payments if he was not allowed visitation. However, this argument fails when the decree itself is examined. In it, the court ordered reasonable visitation on the first and third weekends of each month, and provided that "[s]aid visitation is to continue on the first and third weekend of each month only so long as Respondent pays the Court ordered child support." The decree further ordered that "[i]f said [child support] payments shall not be made to the Clerk of the District Court as herein ordered then the reasonable rights of visitations shall cease." Nowhere in the decree is it stated or implied that the child support obligation would be void if visitation was not provided.

As we recently held in another criminal nonsupport case,

> In the context of a criminal statute, that which is done willfully or purposefully rather than accidentally or involuntarily is done intentionally; being a state of mind, the intent operative at the time of an action may be inferred from the words and acts of an accused and from the facts and circumstances surrounding the conduct.

*State v. Meyer*, 236 Neb. 253, 255, 460 N.W.2d 656, 658 (1990). In that case, the father had attempted to introduce evidence that he stopped paying child support because the mother was no longer making mortgage payments and because the child had been placed in foster care. We noted:

> Meyer does not claim that he accidentally or involuntarily neglected to make the payments; rather, he professes to have had good reasons for willfully and purposefully refraining from so doing. Thus . . . he is concerned not with his intent, but with his motives for knowingly refraining from doing that which he was ordered to do. The evidence with which he is concerned may, in Meyer's own mind, explain why he chose to act as he did, but it does not negate his intent to so act.

*Id.*

We could repeat this statement and simply substitute Beck's name because, like Meyer, Beck does not claim that he simply neglected to make the payments, but suggests that he had a good reason for doing so.

We have never stated that visitation rights and child support payments may be linked such that the failure to provide one shall lead to an excuse not to provide the other. In a civil contempt proceeding, we held:

> The fact that a mother in whose custody a minor child has been placed by the court refuses to permit a father ordered to pay child support to exercise his rights of visitation does not justify the father's withholding the payment of child support. The father is not without remedy and may make application to the court for further orders requiring the mother to permit the father to exercise his right of visitation. The right of visitation, however, is not a quid pro quo for the payment of child support and the mother's action does not justify the father's failure to pay.
>
> . . . .
> . . . Neither of the parties is authorized to interfere with the court's orders and only the court can determine what, if any, adjustments should be made. The disposition of minor children and provision for their support, in an action where a divorce is granted, is not controllable by agreement of the parties, but by the court on the facts and circumstances as disclosed to it. When a court orders the payment of child support, it means to have such order followed.

*Eliker v. Eliker*, 206 Neb. 764, 773-74, 295 N.W.2d 268, 273 (1980).

Beck provided no evidence that he made any attempt to have the decree modified or to have its visitation provisions enforced. We make no finding as to whether his ex-wife did interfere with his visitation. We do find that the evidence and depositions which Beck sought to provide were irrelevant to the issue of his intentional failure to pay child support and therefore were not admissible. We affirm Beck's convictions for criminal nonsupport.

As to the appellant's assignments of error relating to

sentencing, we reach a slightly different result. Each of Beck's convictions was for a Class IV felony, which provides for a maximum of 5 years' imprisonment, a $10,000 fine, or both. See Neb. Rev. Stat. § 28-105(1) (Reissue 1989). He was sentenced to 20 to 60 months' imprisonment on each count, with only two sentences to run consecutively. We repeat once again our rule that a sentence that is within the statutory limits will not be disturbed on appeal absent an abuse of discretion. *State v. Andersen, ante* p. 32, 468 N.W.2d 617 (1991). It is also within the trial court's discretion to direct that sentences imposed for separate crimes may be served consecutively. *Andersen, supra.* We do not find that the trial court abused its discretion in sentencing.

However, we disagree with the trial court's order concerning restitution. The ledger sheets of the clerk of the district court, which sheets were received in evidence, indicate that as of November 30, 1989, Beck's total delinquency stood at $11,463. Garnishment proceedings had been started in late November 1989, so apparently some additional payments had been credited to the account by the time of the sentencing in May 1990. The record does not indicate how the trial court determined that the amount of restitution should be $11,008. In fact, the bill of exceptions indicates that the court ordered restitution in the amount of $10,008, while the judgment indicates $11,008. Whatever the actual figure of Beck's child support arrearage, he cannot be ordered to pay this amount through a criminal prosecution.

Nebraska law provides that "[a] sentencing court may order the defendant to make restitution for the actual physical injury or property damage or loss sustained by the victim as a direct result of the offense *for which the defendant has been convicted.*" (Emphasis supplied.) Neb. Rev. Stat. § 29-2280 (Reissue 1989).

As we recently held in *State v. Escamilla,* 237 Neb. 647, 652, 467 N.W.2d 59, 63 (1991), "[Section] 29-2280 does not permit a court to order an offender to make restitution on a charge of which the offender is not convicted . . . ." Beck was convicted only of failure to pay child support for the months of May, June, July, August, September, October, and November 1989.

Pursuant to the decree of dissolution, he was to pay $75 per month. His restitution should have been based on only the 7 months for which he was convicted, a total of $525. This court cannot and will not serve as a civil collection agency for child support arrearage. We find that Beck should have been ordered to pay $525 as restitution, and we affirm Beck's conviction in all other respects.

AFFIRMED AS MODIFIED.