**In the Matter of the GUARDIANSHIP of Elvis Aaron SEDELMEIER, a Minor.**

**Nos. 17666, 17690.**

Supreme Court of South Dakota.

Considered on Briefs May 26, 1992.

Decided Oct. 21, 1992.

Stuart Tiede, Woods, Fuller, Shultz & Smith, Sioux Falls, for appellants Robert and Barbara Cumber.

Bill Froke, East River Legal Services, Sioux Falls, for appellees Kristine and Barry Bendt.

Patricia C. Riepel, Sioux Falls, for appellee Elvis Aaron Sedelmeier.

HECK, Circuit Judge.

Although this action was started by the filing of a petition for guardianship, it is, in actuality, a proceeding to determine whether a parent or unrelated person is entitled to primary custody of a young boy.

Elvis Aaron Sedelmeier (Aaron) was born February 8, 1981, to Kris and Randy Sedelmeier. When Aaron was a baby, his parents resided near Bob and Barb Cumber (Cumbers). The Cumbers baby-sat for Aaron. The Sedelmeiers marriage ended in divorce in 1983. Kris was awarded custody of Aaron.

About that time the Cumbers began to have a principal role in Aaron's care. Kris was always a part of Aaron's life and Aaron knew her as his mother. When Aaron was four years of age, the Cumbers asked to adopt Aaron. After some thought, Kris refused the request.

In 1985 Kris married Barry Bendt. In 1987 through 1989 Kris had severe medical problems. Three pregnancies resulted in the loss of all three babies during pregnancy. In early 1990 she was hospitalized for depression.

From 1983 to 1990, the Cumbers provided Aaron's primary care. Kris received counseling toward the end of this period and she decided that she would take a more active role in the rearing of Aaron. In August 1990, Kris took Aaron from the Cumbers to live with her. Shortly after returning to live with his mother, Aaron began to develop psychological problems. Kris and the Cumbers disagreed over custody of Aaron. Aaron was hospitalized for thirty days during which time a professional team of caretakers decided that Aaron should live with the Bendts with visitation for the Cumbers. Aaron overcame his major psychological problems. The Bendts moved out of state. Kris has denied visitation to the Cumbers. Aaron has lived with Kris and Barry continuously from August 1990 to the time of this appeal.

■ In legal contests between a parent and a non-parent for the custody of a child the threshold question is: Is the parent unfit to have custody of the child? The Cumbers attempted to establish that it would be in the best interests of Aaron to be in their custody. Without unfitness being established, there is no necessity to look to the best interest of the child.

> The law presumes that the best interests and welfare of a minor will be best served by awarding its custody to the parent *and the burden is upon those who claim otherwise to overcome such presumption by clear and satisfactory proof of abandonment or forfeiture or a legal surrender or unfitness of the parent to have custody.* (emphasis supplied).

*Sweeney v. Joneson,* 75 S.D. 213, 216, 63 N.W.2d 249, 251 (1954).

In *Blow v. Lottman,* 75 S.D. 127, 129–131, 59 N.W.2d 825, 826–27 (1953), this Court said:

> By nature and under the common law and by virtue of statutory provisions ..., a parent has a preferred legal right to custody of his or her own children. But under the common law and modern statutes as well, ... the state through the courts has a right under proper circumstances to terminate the parental right

and deprive the parent of custody. To find the proper delicate balance between this right of the parent and the right of the state is the problem confronting courts in such cases as this where the parent but not the other claimant has a legal right.

\* \* \* \* \* \*

[T]here is in our opinion this helpful guide well recognized in the body of the law: the parents' right to custody over their own children should never be disturbed except upon a clear showing against the parent of "gross misconduct or unfitness, or of other extraordinary circumstances affecting the welfare of the child." ... *The fitness of this mother is therefore a matter of first consideration and her disqualification as custodian is a prerequisite to an award of custody to any other person; ....*

\* \* \* \* \* \*

*We cannot take the position that this finding of "the best interest of said children" carries an inference of the mother's unfitness. It is a false view of the law and of the issues involved to treat the action from the start as an equal contest between two contenders for the child, and without the preliminary determination against the parent's right to custody, to weigh the balance against the parent on a mere finding that it is for the best interest of the child to be given to the other party.* (emphasis supplied).

We stated in *Langerman v. Langerman,* 336 N.W.2d 669, 671 (S.D.1983), that: "Other extraordinary circumstances affecting the welfare of the children can also operate to defeat the custody preference of a parent" without giving guidance as to what were "extraordinary circumstances."

Termination of parental custody should be guided by a finding of one or more of the factors set forth in the Juvenile Code at SDCL 26–7A–6. There, the following factors are listed for consideration when parental custody or parental rights should be terminated: a child whose parent has abandoned him or has subjected him to mistreatment or abuse; a child who lacks proper

parental care through the actions or omissions of the parent; a child whose environment is injurious to his welfare; a child whose parent fails or refuses to provide proper or necessary subsistence, education, medical care or any other care necessary for his health, guidance, or well-being; a child who is threatened with substantial harm; a child who has sustained emotional harm or mental injury as indicated by an injury to his intellectual or psychological capacity evidenced by an observable and substantial impairment in his ability to function within his normal range of performance and behavior, with due regard to his culture; or a child who is subject to sexual abuse, sexual molestation or sexual exploitation by his parent.

■ After a careful consideration of the record, we find insufficient evidence of a clear showing that Kris's parental custody should be terminated.

The Cumbers contend that the trial court erred in not appointing a court-appointed expert (psychologist) to conduct a full, fair and complete home study.

The Cumbers requested that the court "appoint a qualified expert as a court appointed expert for the purpose of evaluating Aaron and to report to the court the psychological and emotional condition of Aaron and his recommendations as the best interests of the child" and "for the purposes of making a determination and recommendation as to custody of Elvis Aaron Sedelmeier ... and to make a recommendation to the court as to the proper person or persons to have custody of Elvis Aaron Sedelmeier and what is in the best interest of Elvis Aaron Sedelmeier."

■ The appointment of a court expert is within the sound discretion of the trial judge. SDCL 19–15–9; *State v. Stuck,* 434 N.W.2d 43 (S.D.1988). Since there was insufficient evidence that Kris was unfit for custody of Aaron, it was unnecessary for a determination or recommendation as to the best person to have custody of Aaron.

The Cumbers also contend that the trial court erred in not permitting Dr. Becking,

the psychologist the Cumbers retained, to evaluate and examine Aaron. The trial court declined the request based upon a recommendation of an experienced child psychologist who had Aaron under her care prior to the request. We find that the trial judge did not abuse his discretion in denying a court appointed expert, nor in refusing to allow the Cumbers' psychologist to examine Aaron. SDCL 19–15–9; *Stuck, supra.*

■ The Cumbers further contend that the trial court erred in failing to award them reasonable visitation.

This Court has held that the right of visitation is derived from the right of custody. In the absence of a statute to the contrary:

> It follows that in order to grant a nonparent visitation rights with a minor child over the wishes of a parent, a clear showing against the parent of gross misconduct, unfitness or other extraordinary circumstances affecting the welfare of the child is required.

*Cooper v. Merkel,* 470 N.W.2d 253, 255–56 (S.D.1991).

Since there was no clear showing of unfitness, the court cannot order visitation for an unrelated non-parent over the wishes of the mother.

The Cumbers object to the court's order requiring them to pay costs associated with appointment of Patricia C. Riepel as the attorney for Aaron.

SDCL 26–10–17 (now SDCL 26–8A–18) provides that the court shall appoint counsel for any child alleged to be abused or neglected in *any* judicial proceeding. While the petition for guardianship did not allege "abuse and neglect" as such, it did allege "the actions of Kristine Bendt have caused and are causing psychological and emotional damage to Aaron" and "that the natural mother is not a fit and proper person to act as guardian or to have the care, custody or control of Aaron" which are factors in the statutory definition of "abuse and neglect." These allegations are sufficient to give the court statutory authority to appoint a lawyer for Aaron.

■ The obligation for the payment of court appointed attorney fees for the child was not fixed until the conclusion of the representation. The law in effect at that time, SDCL 26–8A–18, provided that the attorney fees for court appointed counsel for the child be paid according to SDCL 26–7A–31. That statute provides that the fees be paid by the county in which the action is conducted. SDCL 26–7A–32 provides for a lien by the county against the parents for the payment of fees only in proceedings under chapters 7A, 8A, 8B and 8C. There is no mention of guardianship proceedings. Even if, for the sake of argument, SDCL 26–7A–32 applied to the fees for Aaron's representation, the statute has no exemption for the parents where there is no finding of abuse and neglect. The trial court found no abuse or neglect, therefore, the parents are not obligated to pay even under this statute. Furthermore, there is no statute giving the court authority to assess the costs of court appointed attorney fees against petitioners for the guardianship (Cumbers) and we hold that to so order goes beyond the inherent power of the court.

The trial court is affirmed, except it is reversed in the matter of attorney fees.

MILLER, C.J., and WUEST, HENDERSON and SABERS, JJ., concur.

HECK, Circuit Judge, for AMUNDSON, J., disqualified.