1996 SD 103

**Patrick G. QUINN, Plaintiff and Appellee,**

v.

**Tamara S. MOUW–QUINN, Defendant and Appellant.**

**No. 19045.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 15, 1995.

Decided Aug. 14, 1996.

---

Mary Ann Giebink of Galland Legal Clinic, Sioux Falls, for plaintiff and appellee.

Michael B. Crew of Crew & Crew Attorneys, Sioux Falls, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1] Tamara S. Quinn (Tamara) appeals the provisions of a divorce decree granting Patrick G. Quinn (Patrick) visitation privileges with one of her children, Samantha, and obligating Patrick to pay child support for that child. We affirm.

## FACTS

[¶ 2] The facts of this case are not in dispute and are submitted under an agreed statement of the record. The parties were married in 1984 and divorced in 1986. No children were born of this first marriage. On November 15, 1988, Tamara gave birth to a daughter, Samantha. Patrick is not the father of Samantha. The parties remarried in 1989 and two children were subsequently born during the second marriage, Jacob (dob 5-25-90) and Connor (dob 8-8-91).

[¶ 3] After the first divorce, when Tamara became pregnant with Samantha, she asked Patrick for help although he was not the father. Patrick attended child birth classes and supported Tamara. Upon remarriage in 1989, Patrick accepted Samantha as his own child. To this day, Samantha knows none of the circumstances of her heritage. Patrick has cared for Samantha as a dependent and carries her on his insurance policies. Samantha refers to Patrick as "Daddy" and he is the only father she has ever known. In short, the circuit court found that Patrick and Samantha have established a parent-child relationship.

[¶ 4] On November 4, 1993, Patrick served Tamara with a summons and a complaint for divorce in which he sought custody of all three children. Tamara answered and counterclaimed for custody of the children. The divorce was tried before the circuit court and, on November 15, 1994, the court entered its findings of fact, conclusions of law and judgment and decree of divorce. Custody of the children was awarded to Tamara subject to Patrick's rights of reasonable visitation. The trial court found that it would be in the best interests of Tamara's children for Patrick to have visitation with Samantha.

Patrick was granted visitation with Samantha on the same schedule as his visitation with the other children. The circuit court also found that Patrick should pay child support to Tamara for the support of Samantha as well as Jacob and Connor. The divorce decree was accordingly entered and this appeal followed.

## ISSUE ONE

[¶ 5] **Did the circuit court err in granting Patrick visitation privileges with Samantha?**

[¶ 6] The crux of this issue is whether there is authority for the circuit court to authorize this type of visitation. Patrick argues that such authorization exists as set forth in SDCL 25-4-45.

> In an action for divorce, the court may, before or after judgment, give such direction for the custody, care, and education *of the children of the marriage* as may seem necessary or proper, and may at any time vacate or modify the same. In awarding the custody of a child, the court shall be guided by consideration of what appears to be *for the best interests of the child in respect to the child's temporal and mental and moral welfare* .... (emphasis added).

[¶ 7] Patrick also points out that SDCL 30-27-23, which statutorily granted a preference to a parent in custody proceedings, was repealed by our legislature in 1993 (1993 S.D.Sess.Laws ch. 213 § 170) and in its place SDCL 29A-5-203 was enacted which now allows "any other interested person" to petition for guardianship and/or conservatorship. Patrick argues these statutory changes allow third parties to seek custody of a child "presumably against the wishes of natural parents."

[¶ 8] We have held that the right of visitation derives from the right of custody. *Cooper v. Merkel,* 470 N.W.2d 253, 255 (S.D. 1991). However the legislature has clearly noted that one concept is not synonymous with the other.*

* *See* SDCL 25-4-52: "[t]he circuit court may grant grandparents reasonable rights of visitation with their grandchild, with or without petition by the grandparents, if it is in the best interests of

[¶ 9] SDCL 25–4–45 does not support Patrick's argument. That statute authorizes a divorce court to apply the best interests standard to custody and visitation disputes over "children of the marriage." However, Samantha is not one of the "children of the marriage" between Patrick and Tamara. *Perry v. Superior Court of Kern County*, 108 Cal.App.3d 480, 166 Cal.Rptr. 583 (Cal.Ct. App.1980), *contra Carter v. Brodrick*, 644 P.2d 850 (Alaska 1982). Thus that statute is inapplicable.

[¶ 10] Likewise the repeal of the parental preference statute found in SDCL 30–27–23 and the enactment of SDCL 29A–5–203 which allows "any other interested person" to petition for guardianship and/or conservatorship is not controlling in this case. This is not a case which involves a guardianship or a conservatorship, simply visitation.

[¶ 11] Tamara relies upon *Cooper, supra* and *Matter of Guardianship of Sedelmeier*, 491 N.W.2d 86 (S.D.1992) as authority for her argument that a step-parent has no visitation rights. Both *Cooper* and *Sedelmeier* are premised upon the rationale that, absent extraordinary circumstances, no visitation can be granted to a non-parent against the wishes of the natural parent absent a showing of unfitness on the part of the parent. However, here, the issue is not one of parental fitness, but, rather, what is in the children's welfare. It is also a question of visitation rather than permanent custody. The question of visitation has no more to do with any claim of unfitness of Tamara as a custodial parent than all the other divorce proceedings in this state where visitation is routinely granted to the non-custodial parent. In the end, Tamara retains the custody of all three children regardless of the outcome of this appeal.

[¶ 12] The circuit court has already made a finding that it is in the best interests of Jacob and Connor that they exercise regular visitation with Patrick. Tamara has not appealed this finding. More importantly, the circuit court also made the following finding: "[i]t would be in the best interest of Saman-

tha *as well as Jacob and Connor* for the Plaintiff to have visitation with Samantha on the same schedule that Plaintiff has visitation with the two boys." (emphasis added).

[¶ 13] "Extraordinary circumstances," recognized in *Sedelmeier* as an independent basis for allowing step-parent visitation, denotes far more than a simple showing that visitation would be in the best interests of the child. *Sedelmeier*, 491 N.W.2d at 88. The facts before us satisfy this heavier burden. This case is a clear departure from the customary dynamics of a step-parent and step-child relationship. Significantly, there is no indication that Samantha's biological father has ever had any contact with her whatsoever. Patrick is the only father Samantha has known in her seven years of life. She refers to him as "Daddy." Their relationship is that of a father and daughter in all respects except for that of biology. The impact of preventing Samantha from having contact with the only father she has ever known is likely to be devastating. This is especially true when her half-siblings (whom she believes to be full siblings) will be permitted to regularly visit with Patrick.

[¶ 14] In the normal visitation case, it would be appropriate that all the "children of the marriage" should visit the non-custodial parent at the same time as it is in their best interests to do so. *Mitzel v. Black Cloud–Walberg*, 511 N.W.2d 816 (S.D.1994); *Adam v. Adam*, 436 N.W.2d 266 (S.D.1989); *Mayer v. Mayer*, 397 N.W.2d 638 (S.D.1986). Here, no argument is made, nor can it be made under the facts of this case, to justify that it would be anything but extremely detrimental to the welfare of all three children to exclude Samantha from this family contact. As such, to now affirm court-ordered visitation for two of the children and forbid it for the third, devastates Jacob and Connor as well as Samantha.

[¶ 15] Courts in their role of "parens patriae" have the right and obligation to protect children from the sometimes selfish

the grandchild." *See also* SDCL 25–4–56 dealing with mediation of a "custody or visitation

dispute."

and destructive actions of divorcing parents. The interests of the three children here are far more important than any petty dispute between parents and step-parents. If, as we have often said, siblings' welfare and best interests are served by being together in custody arrangements, then it follows that remaining together in visitation will probably also serve those interests, especially where the children are so close in age. The responsibility is clear: "[i]t is the trial court's duty to see that the children are protected at every turn.... The parents' personal wishes and desires must yield to what the court in the discharge of its duty regards as the children's best interest." *Jasper v. Jasper*, 351 N.W.2d 114, 117 (S.D.1984). In *Williams v. Williams*, 425 N.W.2d 390, 393 (S.D.1988) we recognized that courts, acting as "parens patriae," have the authority and obligation to assure children are not placed in arrangements detrimental to their emotional and physical well-being.

[¶ 16] The circuit court has jurisdiction over Tamara as the mother of the three children via these divorce proceedings. We find no statutory prohibition to preclude the circuit court from enforcing the spirit as well as the letter of the law by ordering the mother, as custodian of all three children, to use her best efforts to ensure visitation by all three children jointly and thus avoiding their unjustifiable and unnecessary separation.

[¶ 17] This is not to be seen as advancing the interests of the step-father at the expense of the natural mother. It is a continued recognition that the temporal, mental and moral welfare of children are paramount. This strikes the proper balance between a natural parent's custodial rights to his or her child and the child's personal welfare. Children come first. If the circuit court concludes it is in all three children's welfare in these exceptional circumstances to go on visitation together, then it should be so ordered.

### ISSUE TWO

[¶ 18] **Did the circuit court err in requiring that Patrick pay child support to Tamara for the benefit of Samantha?**

[¶ 19] This case presents the unique scenario of Tamara as a divorced wife, advo-cating that Patrick, her former husband, should NOT be required to pay child support for Samantha while Patrick requests that he be allowed to, "continue the responsibility of paying child support for her."

[¶ 20] At the outset, a question of standing arises under this issue. The right of appeal is limited to aggrieved parties and when a judgment is rendered in a party's favor, that person cannot be an aggrieved party unless the adjudication is, in some way, prejudicial to that party. *Jones v. Dappen*, 359 N.W.2d 894 (S.D.1984). In this instance, Tamara is the prevailing party on the issue of child support and it is difficult to perceive how the adjudication is prejudicial to her as that determination has nothing to do with Patrick's right to exercise visitation with Samantha. *See State v. Beck*, 238 Neb. 449, 471 N.W.2d 128 (1991) (award of visitation is not a quid pro quo for payment of child support). Only Patrick has the right to appeal and question the authority of the circuit court to enter a child support judgment against Patrick and in favor of Tamara. Accordingly, we affirm on this issue.

### ISSUE THREE

#### Attorney Fees

[¶ 21] Both parties have filed motions for an award of appellate attorney fees. The motions are accompanied by itemized statements of costs incurred and legal services rendered as required by *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985). The factors considered in awarding appellate attorney fees are: the property owned by each party, their relative incomes, whether the requesting party's property is in fixed or liquid assets, and whether either party unreasonably increased the time spent on the case. *Hogie v. Hogie*, 527 N.W.2d 915, 922 (S.D.1995). Based upon our consideration of these factors, we hold that each party shall be responsible for their own appellate attorney's fees.

[¶ 22] Affirmed.

[¶ 23] MILLER, C.J., and KONENKAMP, J., concur.

[¶ 24] SABERS, J., concurs and concurs in result.

[¶ 25] AMUNDSON, J., dissents.

SABERS, Justice (concurring and concurring in result).

[¶ 26] I am satisfied that the trial court had jurisdiction over:

[¶ 27] 1. Tamara, the mother of all three children, Samantha, Jacob and Connor, which jurisdiction includes the right to determine visitation and support of all three children.

[¶ 28] 2. Patrick, the father of the two youngest children, Jacob and Connor, which jurisdiction includes the right to determine visitation and support of these two children.

[¶ 29] 3. The children, Samantha, Jacob and Connor, which jurisdiction includes the right to determine visitation and support of all three children.

[¶ 30] The fact that any decision concerning Samantha may not be binding upon the natural father of Samantha is immaterial here and now because he is not a party to the action and, for all practical purposes, has abandoned any parental rights to Samantha.

[¶ 31] The trial court essentially found that it would be in the best interest of Samantha to have visitation with Patrick on the same schedule with the other children. This was in her best interest and everyone seems to agree except Tamara. It is not necessary to modify *Cooper* to provide Samantha the right to visit Patrick with the other children because we are dealing with the right of the child to visit with *her* half siblings. At any rate, under these circumstances, it is not a matter of jurisdiction. Nor is it judicial legislation.

[¶ 32] Child support is for the benefit of the child, not the custodial parent. SDCL 25–4–45 and 25–7–6.1. As the mother, Tamara has no authority to deny Samantha Patrick's voluntary support for Samantha's care. If Tamara will not accept the funds for Samantha, a guardian will. The decision by the trial court concerning the volunteered child support from Patrick was not an abuse of discretion. *Steffens v. Peterson*, 503 N.W.2d 254, 257 (S.D.1993).

[¶ 33] Therefore, I concur in result on issues 1 and 2 and concur on issue 3, attorney fees.

AMUNDSON, Justice (dissenting).

[¶ 34] I respectfully dissent. It is undisputed that Patrick is not the natural or adoptive parent of Samantha.

[¶ 35] In *Cooper v. Merkel,* 470 N.W.2d 253 (S.D.1991), this court squarely addressed the issue of the visitation rights of a nonparent. In *Cooper,* a couple lived together for seven years, however, they never married. The couple separated and, during the course of the protection order proceedings, the plaintiff sought visitation privileges with the defendant's minor child. The plaintiff alleged that he had assumed part of the responsibility for raising the child, that he had become a de facto parent to the child and, therefore, he should be granted the opportunity to visit the child. The trial court dismissed the plaintiff's request and the plaintiff appealed. We affirmed, stating:

> This court has not spoken directly to the issue of the visitation rights of a nonparent. However, "[t]he right of visitation derives from the right of custody and is controlled by the same legal principles." This court *has* spoken to the custodial rights of nonparents.
>
>> Before a parent's right to custody over his or her own children will be disturbed in favor of a nonparent a clear showing against the parent of "gross misconduct or unfitness, or of other extraordinary circumstances affecting the welfare of the child" is required, and an award cannot be made to [nonparents] simply because they may be better custodians.
>
> It follows that in order to grant a nonparent visitation rights with a minor child over the wishes of a parent, a clear showing against the parent of gross misconduct, unfitness or other extraordinary circumstances affecting the welfare of the child is required.

*Cooper,* 470 N.W.2d at 255–56 (citations omitted) (emphasis in original).

[¶ 36] The principles enunciated in *Cooper* were subsequently reaffirmed in *Matter of*

*Guardianship of Sedelmeier*, 491 N.W.2d 86 (S.D.1992). In *Sedelmeier*, a couple provided primary care for the child of a divorced neighbor woman for a period of seven years. At the end of this seven-year period, the mother took the child back into her custody. A custody dispute between the mother and the neighbor couple ensued. The trial court awarded custody to the mother and we affirmed. The trial court also denied the neighbor couple visitation with the child and this court affirmed stating: "Since there was no clear showing of unfitness, the court cannot order visitation for an unrelated nonparent over the wishes of the mother." *Id.* at 89.

[¶ 37] In this instance, there has also been no clear showing of unfitness with regard to Tamara. Therefore, the trial court erred in awarding Patrick visitation privileges with Tamara's child. SDCL 25–4–45 limits the circuit courts to awarding custody of and visitation with, "the children of the marriage." In *Paquette v. Paquette*, 146 Vt. 83, 87, 499 A.2d 23, 27 (1985), the Vermont Supreme Court held that a stepchild was included as a "child of the marriage." The court in *Paquette*, however, had the Vermont Legislature's guidance at 15 V.S.A. § 291(g), which states that the definition of children "shall include stepchildren." 146 Vt. at 93, 499 A.2d at 30 (Billings, C.J., concurring in part and dissenting in part) (citing 15 V.S.A. § 291(g)). Our legislature has not defined children to include stepchildren in allowing the trial court jurisdiction over stepchildren during divorce proceedings.

[¶ 38] In *Perry v. Superior Court of Kern County*, 108 Cal.App.3d 480, 166 Cal.Rptr. 583 (1980), *superseded by* statute as stated in *In re Marriage of Goetz and Lewis*, 203 Cal.App.3d 514, 250 Cal.Rptr. 30, 31 (1988), the court faced the same challenge as we do today. The *Perry* court noted:

> We are aware that in this modern society there are probably a considerable number of stepparents and stepchildren in situations substantially similar to that before us. The Legislature has the power to address this thorny problem of visitation by stepparents. We, on the other hand, cannot rewrite Civil Code section 4351 by a strained interpretation of the phrase "minor children of the marriage" merely because one mother has made a decision which the trial court and probation department have determined is contrary to the child's best interest.

166 Cal.Rptr. at 586. The California Legislature did respond by allowing trial courts the discretion to award a limited form of visitation to stepparents in a dissolution proceeding. Cal.Civ.Code § 4351.5 (West 1995). However, the California Legislature "acknowledged the importance of parental autonomy by cautioning that even an award of visitation to a stepparent 'shall not conflict with any visitation or custodial right of a natural or adoptive parent[.]'" *Nancy S. v. Michele G.*, 228 Cal.App.3d 831, 279 Cal. Rptr. 212, 217 (1991) (quoting Cal.Civ.Code § 4351.5(j)). The South Dakota Legislature must make the decision whether to grant stepparents visitation.

[¶ 39] We recognize that other jurisdictions have allowed visitation by a stepparent under the doctrine of *in loco parentis*. *Carter v. Brodrick*, 644 P.2d 850, 854 (Alaska 1982); *Anderson v. Anderson*, 191 Kan. 76, 79, 379 P.2d 348, 351 (1963); *Paquette*, 146 Vt. at 87, 499 A.2d at 27. Yet, this court rejected this doctrine in *Cooper*, 470 N.W.2d at 255–56.

[¶ 40] The majority applies the doctrine of *parens patriae* in order to grant Patrick visitation. In *Williams v. Williams*, 425 N.W.2d 390, 393 (S.D.1988), we held that trial courts have the authority and obligation to protect children from remaining in an environment detrimental to their emotional and physical well-being. *See also* SDCL 19–14–26 and –27. The cases where we have recognized *parens patriae* deal with children of the marriage whose custody is at issue because neither parent really serves the child's best interests. *See Matter of Guardianship of Petrik*, 544 N.W.2d 388, 391 (S.D.1996); *Jeschke v. Wockenfuss*, 534 N.W.2d 602, 605 (S.D.1995); *Swenson v. Swenson*, 529 N.W.2d 901, 904 (S.D.1995); *Williams*, 425 N.W.2d at 393; *Jasper v. Jasper*, 351 N.W.2d 114, 117 (S.D.1984). Tamara is not an unfit parent.

[¶ 41] Therefore, I would stay the course of the established precedent of our prior deci-

sions and leave for the legislature to determine whether our trial courts have jurisdiction to decide stepparent visitation.