STATE OF NEBRASKA, APPELLEE, V. LLOYD R. TRACKWELL, JR., APPELLANT.

547 N.W.2d 471

Filed May 10, 1996.  No. S-95-278.

David L. Kimble for appellant.

Lloyd R. Trackwell, Jr., pro se.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WHITE, C.J.

Aggrieved by his conviction for attempted second degree sexual assault upon a no contest plea, Lloyd R. Trackwell, Jr., asks this court to find that the trial court accepted his plea despite that it was allegedly neither knowing nor voluntary. We disagree, and affirm.

The conviction from which Trackwell appeals resulted from his third trial for one offense. Trackwell was charged with first degree sexual assault on June 2, 1992. The first trial of this charge ended in a jury verdict finding Trackwell guilty as charged; he was sentenced to not less than 10 nor more than 50 years' imprisonment. This court reversed that verdict, finding that the prosecutor had made improper comments in her closing argument that amounted to prejudicial error. See *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994). The sec-

ond trial ended when the trial court declared a mistrial because the jury was unable to reach a verdict.

Trackwell began his third trial maintaining the defense he had proffered at the earlier trials: that he was not guilty because the victim had consented to sexual intercourse, subsequently demanded payment for her services, and then fabricated sexual assault charges when Trackwell refused to pay. The State called the victim as its first witness; after the first day of her testimony, Trackwell decided to plead no contest to the lesser offense of attempted second degree sexual assault. The trial court accepted Trackwell's plea and sentenced him to imprisonment for not less than 20 months nor more than 5 years. Trackwell was to serve this sentence consecutively to his sentence for another, unrelated conviction.

After Trackwell began serving his sentence for the other conviction, he requested and received appointed counsel to appeal his conviction in this case. His attorney, the Seward County public defender, filed a brief assigning two errors: that Trackwell's sentence was excessive and that the trial court erred in accepting Trackwell's plea without informing Trackwell of his right to counsel and without examining Trackwell to ensure that he understood that right. Dissatisfied with the public defender's effort, Trackwell fired him, complaining that due to Trackwell's present difficulties, he did not trust any attorney from Seward County. In particular, Trackwell criticized the refusal to assign certain errors that Trackwell considered meritorious.

Trackwell, acting pro se, then submitted a series of revised briefs in lieu of his former attorney's brief, which was stricken. The most recent brief assigns eight errors. Three errors concern the decision of the trial court to allow the reading of prior sworn testimony of an unavailable witness during Trackwell's second trial, and one error concerns the trial court's decision to limit cross-examination of a defense witness during the second trial. Given that the second trial resulted in a mistrial and given that Trackwell decided to plead no contest early in the third trial before either of those particular witnesses was called, whatever error might have inhered in those decisions has no bearing on the trial that resulted in

Trackwell's conviction. Those assigned errors are without merit.

Trackwell also assigns a host of errors that allege misconduct on the part of the trial judge and prosecutor. Specifically, Trackwell claims that "[t]he Seward County Attorney violated Disciplinary Rules by intentionally ignoring ongoing criminal activity on the part of the district court judge . . . thereby prejudicing the appellant's rights to a fair impartial trial." In support of this error, Trackwell includes in the transcript a number of newspaper articles reporting allegations of misconduct against the trial judge. Trackwell does not offer evidence of how such allegations affected the outcome of his case, other than to argue in his brief that the allegations against the trial judge "create[d] a question of viability of his view of the wrongful actions of someone else in a case involving sexual misconduct." Pro se supplemental brief for appellant at 26.

This falls far short of a sufficient basis for this court to find that the trial judge deliberately "threw" the outcome of Trackwell's case. It is incumbent upon an appellant to present a record which supports the errors assigned; absent such a record, as a general rule, the decision of the lower court as to those errors is to be affirmed. *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994). As the record does not support Trackwell's theories of the judge's motives for ruling as he did, we dismiss this assignment of error.

Trackwell alleges that the county attorney knew of the allegations against the trial judge and failed to either request him to recuse himself or "investigate and inform opposing counsel of the situation." Pro se supplemental brief for appellant at 25. Trackwell further alleges that the county attorney deviously used her knowledge of the allegations against the trial judge to extort rulings in her favor throughout the litigation of Trackwell's case. In particular, Trackwell argues that

> [i]n light of some of the questionable decisions the court made in the prosecution's favor there is created the impression that perhaps the county attorney had informed the judge of the complaints against him and utilized such information to her advantage by persuading the court to rule in the State's favor.

*Id.*

In reviewing the decision of a lower court, this court considers only evidence included within the record. *State v. Covarrubias*, 244 Neb. 366, 507 N.W.2d 248 (1993). We find absolutely no evidence in the record, other than Trackwell's bare allegations in his third revised pro se supplemental brief, to support this allegation. The assignments of error alleging misconduct by the trial judge and the county attorney are dismissed.

Trackwell has also assigned as error the quality of appointed counsel's representation on appeal. Trackwell argues that in refusing to include the above-listed assignments of error alleging misconduct by the trial judge and the county attorney, appointed counsel erred; Trackwell is wrong. He further argues that the public defender hired another party to compose his brief; this is unsupported by the record and, even if true, is irrelevant.

We are left, then, with one assignment of error worthy of discussion: whether the trial court erred in accepting Trackwell's no contest plea. This court has held that the voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. *State v. Biernacki*, 237 Neb. 215, 465 N.W.2d 732 (1991). Trackwell alleges that his defenses remain viable, because his plea was not knowingly and voluntarily entered. This argument seems to include three allegations, the first of which derives from the presence of the jury during Trackwell's plea hearing. Trackwell argues that the jury would have been irredeemably tainted and unable to continue its impartial receipt of the evidence in the event that the trial judge would refuse Trackwell's plea; accordingly, Trackwell ostensibly was pressured to plead in light of this apparent sign that the trial judge had already decided to accept the plea before the plea hearing.

We cannot consider the validity of this contention in light of the fact that Trackwell not only acceded to the jury's presence, but in fact requested the jury's presence. When Trackwell's trial counsel informed the trial court that Trackwell wished to plead no contest, the following colloquy occurred:

[Counsel]: Your Honor, at this time, we would move the Court to withdraw the earlier plea of not guilty to the previous information, we would waive the 24-hour notice and a formal reading of the amended information, and are prepared to enter a plea of no contest to the amended information which is . . . attempted second degree sexual assault, a Class IV felony.

THE COURT: Very well, let's bring the jury in, I think we'll do this in front of the jury, they're entitled to know.

[Trackwell]: Can they be here, can they sit in the audience?

THE COURT: Anyone can be here, Mr. Trackwell.

[Trackwell]: Because I'd like to say something then about this whole thing.

THE COURT: Certainly. They will not be required to be here, but they may be here.

[Trackwell]: Can I ask them to be here, if they would?

THE COURT: Better discuss that with counsel, they are under no obligation to be here. You may bring them in.

Trackwell also requested the jury's presence during sentencing:

THE COURT: Well, as soon as we can get the old [presentence investigations] collected and take a look at those, we'll have sentencing. I — I can tell you it won't be yet this morning, but we'll try to have it ready for you at 1:30.

[Trackwell]: Can — Can we ask the jury to come back and listen to it in the audience, because I have something to say to Seward County.

A defendant in a criminal case may not take advantage of an alleged error which the defendant invited the trial court to commit. *State v. Brock*, 245 Neb. 315, 512 N.W.2d 389 (1994). Trackwell's desire to have the jury present during his plea hearing, and again during sentencing, is unambiguous. Accordingly, while the propriety of jury presence during a plea hearing might otherwise be questionable, the jury's presence in this case does not require reversal.

Trackwell's second allegation is that his plea was not voluntary because his will had been overborne by the taxing experience of being thrice tried for the same offense. Trackwell claims that some of his statements to the court during the plea colloquy should have indicated to the trial court that he was pleading for reasons other than moral resignation to the consequences of his actions. Specifically, Trackwell stated in response to the question of whether he had discussed defenses with his attorney that "I tried to defend this three trials, I — I'm barking up a tree that I can never overcome." In response to the question of whether Trackwell had questions about the rights he waived in pleading, Trackwell stated that "I just say if you want me, you got me, here I am. I plead to whatever."

The stress of enduring criminal litigation is considerable for any defendant, guilty or innocent. That Trackwell endured litigation three separate times, however, is the result of one concerted effort to convict Trackwell and one instance of continuing jeopardy: the State did not oppress Trackwell unfairly in pursuing a conviction for this serious felony charge. Absent some evidence of physical or mental coercion, whatever stress a defendant perceives from litigation alone cannot invalidate his plea. See *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970) (holding that fear of greater punishment cannot constitute kind of coercion that renders plea involuntary).

In *Brady*, the U.S. Supreme Court considered the question of whether a defendant's plea is truly voluntary when, in part, the plea is motivated by a fear of the greatest possible punishment. The Court noted that a decision to plead guilty may derive from several motivations:

> For some people, their breach of a State's law is alone sufficient reason for surrendering themselves and accepting punishment. For others, apprehension and charge, both threatening acts by the Government, jar them into admitting their guilt. In still other cases, the post-indictment accumulation of evidence may convince the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family. All these pleas of guilty are valid in spite of the State's responsi-

bility for some of the factors motivating the pleas; the pleas are no more improperly compelled than is the decision by a defendant at the close of the State's evidence at trial that he must take the stand or face certain conviction.

397 U.S. at 750.

Like the *Brady* Court, we decline to hold that a guilty plea is compelled and invalid when it is motivated by the defendant's desire to accept the probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction. Accordingly, we hold that the voluntariness of Trackwell's plea is not called into question by the mere fact that Trackwell perceived a certainty of harsh punishment upon conviction for the greater charge.

Trackwell's third and final allegation concerns his right to counsel under the Sixth Amendment to the federal Constitution. Before accepting a plea of guilty, the court must inform the defendant of the nature of the charge, the right to assistance of counsel, the right to confront adverse witnesses, the right to trial by jury, and the privilege against self-incrimination. *State v. Biernacki*, 237 Neb. 215, 465 N.W.2d 732 (1991). The court must examine the defendant in order to determine whether he or she understands that information. *Id*.

In its examination of Trackwell during the plea hearing, the trial court advised Trackwell of his right to the presumption of innocence and that he could plead guilty, not guilty, or no contest, and the legal significance of each plea. He was advised of the nature of the charges against him and of his rights to a trial by jury, to confront his accusers, to subpoena and present witnesses, to remain silent and not incriminate himself, and to require the State to prove his guilt beyond a reasonable doubt. The court did not, however, advise Trackwell that he had a right to counsel.

This court has held that a criminal defendant who is represented by counsel need not be informed that she or he has a right to be so represented. *Biernacki, supra*. In *Biernacki*, we upheld the conviction of a defendant who was represented by counsel at the time of her guilty plea, notwithstanding the trial court's failure to advise her that her right to counsel remained

intact if she chose to plead not guilty. The record in *Biernacki* reflected that the defendant in that case had at all times in every proceeding been represented by counsel.

Trackwell was represented by private counsel in all three trials and in the appeal of the conviction in the first trial; the record reveals no instance that Trackwell appeared without counsel. Notwithstanding this, Trackwell argues that the court should have inferred from his comments in the plea colloquy that he was in need of appointed counsel. Trackwell had stated that he had run out of money to contest the charges against him:

> THE COURT: Mr. Trackwell, under the law you're entitled to a trial by jury, as you know. If I accept your plea, that will complete this trial and you will be waiving any further trial that you may have. Do you understand that?
>
> [Trackwell]: Yes, I can't afford any more.
>
> . . . .
>
> THE COURT: Has anyone connected with law enforcement or anyone else made any threat to you, directly or indirectly, used any force, held out any promises to you —-
>
> [Trackwell]: No, I have — nobody's threatened me. I've ran out of money. I can't handle this anymore.
>
> THE COURT: Well, let me finish my question, Mr. Trackwell. Has anyone done any of that to get you to waive and do without any of these rights we've been talking about?
>
> [Trackwell]: No.

These comments alone do not raise an inference that a defendant is about to waive involuntarily his right to counsel. Like the defendant in *Biernacki*, Trackwell stated in the plea colloquy that he was satisfied with his representation by his private counsel and that he considered private counsel to be competent. Trackwell did not state that his attorney was preparing to withdraw or that he was otherwise in danger of hazarding the remainder of the trial by himself. Nor, for that matter, did Trackwell's private counsel move to withdraw or otherwise state that his representation of Trackwell would be

in any way affected by Trackwell's depleting financial resources. Trackwell's comments were not enough to place the court on notice that there may have been a change in the financial or economic condition which would alter Trackwell's indigency status.

This case is distinguishable from *State v. Sondag*, 214 Neb. 659, 335 N.W.2d 306 (1983), wherein we reversed the conviction of a defendant who had indicated that he was indigent, but whom the trial court did not advise of his right to appointed counsel. The defendant in *Sondag* had appeared without counsel at trial; in response to the court's questions of whether he wished to proceed pro se, the defendant stated that he had formerly declined appointed counsel on the erroneous assumption that he could afford private counsel and that he was proceeding pro se because he could not afford an attorney. We found that the trial judge should have made reasonable inquiry to determine the defendant's financial condition when the defendant stated that he could not afford an attorney.

The presence of a defendant at trial with no representation whatsoever is a red flag to a trial court that some inquiry may be necessary as to why he is unrepresented; the clear response of a defendant that he has no attorney because he cannot afford to hire private counsel is a plain warning that a Sixth Amendment violation may be underway. The circumstances of Trackwell's case fall short of such clear notice. Trackwell was represented by counsel and although he indicated that he was running out of money, did not indicate that his attorney would abandon him if the trial proceeded. The trial court did not err in failing to gather from Trackwell's comments that Trackwell was in immediate need of advice of his right to appointed counsel.

Notably, the State argues without citing authority that "the obligation to explain [the right to appointed counsel to Trackwell] rested primarily with his retained counsel, not the court." Brief for appellee at 11. This contention is categorically wrong. Our acceptance of this contention as the basis for our holding would violate expressly the holding of the U.S. Supreme Court in *Boykin v. Alabama*, 395 U.S. 238, 89 S.

Ct. 1709, 23 L. Ed. 2d 274 (1969). In *Boykin*, the Court held that

> [w]hat is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought [citations omitted], and forestalls the spin-off of collateral proceedings that seek to probe murky memories.

395 U.S. at 243-44. Neither *Boykin* nor any other decision of the U.S. Supreme Court or of this court places this burden on private counsel so as to exonerate the state from this basic duty.

We know of no practice or custom within any court system of the United States wherein private counsel is responsible for creating a record, satisfactory under *Boykin*, of the accused's understanding of his rights. While it may be private counsel's professional duty to apprise a defendant of his rights, it is not his constitutional duty; it is, however, the state's constitutional duty to inform a defendant of his rights, and the trial court acts as the representative of the state in discharging that duty. The court would have been charged with the duty of apprising Trackwell of his right to appointed counsel had Trackwell given the trial court adequate notice of his indigency. It is because Trackwell did not do so that we find no violation of his right to counsel, and accordingly, we affirm his conviction.

AFFIRMED.