IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. CHURCHICH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
RAYMOND L. CHURCHICH, JR., APPELLANT.

Filed October 21, 2014.    No. A-13-1005.

Appeal from the District Court for Sarpy County: DAVID K. ARTERBURN, Judge. Affirmed.

Tracy Hightower-Henne, Susan Reff, and Wesley Van Ert, of Hightower Reff Law, L.L.C., for appellant.

Jon Bruning, Attorney General, and Stacy M. Foust for appellee.

IRWIN, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

Raymond L. Churchich, Jr., was charged with seven felonies arising out of a standoff during which he barricaded himself in his parents' basement with a shotgun and fired multiple shots outside a window in the direction of police officers responding to the scene. Pursuant to a plea agreement, Churchich pled no contest to an amended information, which charged him with attempted first degree assault on an officer, attempted second degree assault on an officer, and use of a firearm to commit a felony. The Sarpy County District Court accepted Churchich's pleas and sentenced him to 15 to 30 years' imprisonment for his attempted first degree assault on an officer conviction, 7 to 15 years' imprisonment for his attempted second degree assault on an officer conviction, and 5 to 15 years' imprisonment for his use of a firearm to commit a felony conviction. The court ordered each sentence to be served consecutively. Churchich was also ordered to pay restitution in the amount of $4,440.56 to the Bellevue Police Department (BPD). On appeal, Churchich challenges his convictions and sentences, and argues he received ineffective assistance of counsel.

- 1 -

BACKGROUND

On August 10, 2012, several officers from the BPD were dispatched to a residence in Bellevue, Nebraska, following a call from a neighbor to the 911 emergency dispatch service. Officers were advised that Churchich was armed with a 12 gauge shotgun and was shooting it inside the house. Churchich was alone in the residence, which belonged to his parents.

Upon arriving at the scene, Officers David Brewer and Troy Boyle took cover behind a nearby pickup truck belonging to one of Churchich's neighbors. After the two officers took cover, Churchich shot his shotgun twice in rapid succession in their direction from the basement window, hitting the pickup truck behind which they had taken cover. According to police reports, Officer Brewer felt light debris falling on his hair and Officer Boyle heard the shotgun rounds skipping off the pavement and striking the pickup truck behind which they were maintaining cover. Another officer dispatched to the scene, Officer Mike Brazda, noted in his report that after these two shots were fired, he heard Churchich say something to the effect of "Fuckers"--"I know where you are hiding" or "come out of hiding."

A tactical negotiations unit and SWAT team were notified to respond to the scene. Churchich remained inside the residence and spoke with negotiators via text messaging. Churchich had also been texting his parents and friends, indicating he wanted to commit suicide. A text to a friend said, "I'm leaving planet earth by a gauge to the heart," and asked the friend to be a "pallbearer." A text from Churchich to his father read, "The cops r here and its either them or me."

The SWAT team decided to employ a tactical robot with video capabilities to attempt to locate Churchich's whereabouts within the residence. The robot was parked near the open garage of the residence, attempting to get a visual through an open door from the garage into the interior basement. Churchich shot at the robot four times. At the time Churchich shot at the robot, Officer John Stuck, who was with other members of the SWAT team, was standing near the open garage door of a neighboring residence about 25 yards away. According to Officer Stuck's report, when Churchich fired the first round toward the robot, Churchich's gun was pointed in Officer Stuck's direction. Police reports note that the pellets from Churchich's shotgun blast struck to either side of Officer Stuck, but did not cause him injury.

The standoff with Churchich ended when the SWAT team deployed pepper rounds into the residence, forcing Churchich outside where he was taken into custody. Churchich had blue paint writings on his body, one of which said "fuck Sarpy County Police."

The State filed a complaint in county court on August 20, 2012, and an information in district court on September 27, charging Churchich with two counts of attempted first degree assault on an officer (Officers Brewer and Boyle), three counts of use of a firearm to commit a felony, attempted second degree assault on an officer (Officer Stuck), and criminal mischief (more than $1,500).

Churchich was arraigned on October 1, 2012, and pled not guilty. The court released Churchich on bond and delineated several conditions of his bond, including his participation in and successful completion of an inpatient chemical dependency program. Churchich was also required to participate in substance abuse treatment, aftercare, "AA," "NA," and all mental

health counseling required by "Pretrial Services." Churchich was required to wear a continuous alcohol monitoring device and electronic monitoring device.

On December 17, 2012, the State requested a capias for Churchich, alleging he left his court-ordered placement at the inpatient chemical dependency program and removed his electronic monitoring device. The court issued a capias on the same date. Churchich was arrested on December 18.

On December 21, 2012, Churchich filed a motion to determine his competency and sanity. A hearing on this motion was held on January 7, 2013. The court entered an order for psychiatric evaluation regarding Churchich's competency to stand trial.

On February 4, 2013, a hearing was held wherein Churchich's counsel withdrew and new counsel for Churchich entered an appearance. The court granted Churchich's new counsel's request for a continuance to obtain additional physicians to examine Churchich.

On March 11, 2013, a hearing was held regarding Churchich's motion to determine competency and sanity. Counsel for Churchich informed the court that his motion for sanity was "tabled" because it would be an issue at trial. According to a March 11 journal entry, the court found Churchich was competent to stand trial.

The court entered an order on May 6, 2013, scheduling trial for July 24 and 25. On July 12, a hearing was held wherein Churchich requested a continuance of trial. The parties informed the court that the State had agreed to extend the deadline for Churchich to accept a plea agreement.

On July 22, 2013, a hearing was held regarding a plea agreement reached between the State and Churchich. The State agreed to dismiss four of the felonies pending against Churchich in exchange for his no contest pleas to the remaining charges and his agreement to pay restitution. The State sought leave to file an amended information, charging Churchich with (1) attempted first degree assault on an officer pursuant to Neb. Rev. Stat. §§ 28-929 and 28-201(4)(a) (Cum. Supp. 2012), a Class II felony; (2) attempted second degree assault on an officer pursuant to Neb. Rev. Stat. § 28-930 (Cum. Supp. 2012) and § 28-201(4)(b), a Class III felony; and (3) use of a firearm to commit a felony pursuant to Neb. Rev. Stat. § 28-1205(1)(c) (Cum. Supp. 2012), a Class IC felony.

At the plea hearing, Churchich replied affirmatively to the court that he was acting freely and voluntarily and that he understood that as a result of the plea agreement, he would be found guilty of a Class II felony, a Class III felony, and a Class IC felony. Churchich informed the court that he was taking medication for bipolar disorder, but he believed his head was clear and understood what he was doing. The court inquired of Churchich's counsel whether he believed Churchich was competent to plead and whether he was able to understand the proceedings, and counsel replied that in his opinion, Churchich understood what was happening and realized the amended information and plea agreement were in his best interests. The court then found that Churchich understood the nature of the hearing, found that Churchich was alert and competent to plead, and granted the State leave to file the amended information. Churchich waived the 24-hour waiting period and entered pleas of no contest to each of the three counts contained in the amended information.

Before the court accepted Churchich's pleas, the court proceeded to formally advise Churchich of all of his statutory and constitutional rights and informed Churchich that by

pleading no contest, he would waive all those rights except the right to an attorney and the right to appeal. Churchich replied affirmatively that he understood he would be waiving all other rights except for the two the court mentioned. The court also informed Churchich of the maximum and minimum sentences and penalties for each count. Churchich replied affirmatively that he understood the charges, the possible penalties, and what his rights were, and that he had discussed the case completely with his attorneys. He replied affirmatively that he was freely, voluntarily, and knowingly entering pleas of no contest and waiving his rights.

The court then asked the State to provide the factual basis. The State recounted the following:

> On August 10th, 2012, officers from the [BPD] were dispatched to a residence [on] Alberta Avenue in regards to a call of shots fired. The reporting party, who was a neighbor, had called 911 to report that his neighbor, who was later identified as Raymond Churchich, Jr., was armed with a gun. While en route, the call dispatched that Churchich was reportedly in the basement of the residence [on] Alberta [Avenue] armed with a 12-g[au]ge shotgun and was shooting inside the residence . . . . Officers arrived in the area and began establishing a perimeter around the residence. The first responding officer on the scene was Sergeant McDaniel. As he approached the residence, he advised via radio he had heard two shotgun blasts. Arriving at the scene right about the time that Sergeant McDaniel did were two other officers who were approaching from the southwest. They were Officers Brewer and Boyle. They came up and noted that they were not covered. They saw an extended cab 2004 Chevy Silverado pickup truck parked in the street on Alberta Avenue. They immediately took cover at that Chevy -- behind that Chevy Silverado. At that time the shotgun blast did come and strike the Chevy Silverado in which they were taking cover behind. Both officers later testified in a deposition that they felt the rain of the glass come down on them behind the car. At that point the SWAT team was called again putting another perimeter around the -- tightening the perimeter around the residence. The SWAT team were clothed in tactical gear. They fanned out around the residence coming close to the open garage door. They deployed a robot which was able to be maneuvered via remote control and sent that into the garage so they could get a better look what was going on. At that point . . . Churchich came up and out of the residence door into the garage with the 12-g[au]ge shotgun, pointed the weapon toward the robot, as well as Officer Stuck, who was standing there as part of the SWAT team and covered in tactical gear, and did fire and damage the robot, as well as the blast did strike . . . Officer Stuck, not hurting him because of the tactical gear. At that point gas was fired in to help get . . . Churchich out. He was later taken into custody as well as they took into custody a 12-g[au]ge shotgun, as well, all events occurring in Sarpy County, Nebraska.

After the State concluded, the court stated, "This being a plea of no contest, the Court will not inquire of [Churchich] regarding factual basis." The court found there was a factual basis for Churchich's pleas, accepted his pleas of no contest, and found him guilty of attempted first degree assault on an officer, attempted second degree assault on an officer, and use of a firearm to commit a felony.

- 4 -

A sentencing hearing was held on October 15, 2013, and Churchich was sentenced as set forth previously.

Churchich, represented by new counsel, timely appealed.

ASSIGNMENTS OF ERROR

Churchich assigns five errors on appeal, summarized and restated as follows: (1) the State committed prosecutorial misconduct by making a false statement during the factual basis for his plea; (2) the procedure employed by the district court at the plea hearing violated his right to due process; (3) the district court erred in finding him guilty of attempted first degree assault on an officer and use of a deadly weapon to commit a felony; (4) the district court imposed excessive sentences; and (5) he received ineffective assistance of counsel.

STANDARD OF REVIEW

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Carngbe*, 288 Neb. 347, 847 N.W.2d 302 (2014). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Filholm, supra*.

ANALYSIS

*Prosecutorial Misconduct.*

Churchich argues that the State committed prosecutorial misconduct because at the plea hearing, the county attorney made statements in the factual basis "that were wholly unsupported by evidence." Brief for appellant at 9. Specifically, Churchich takes issue with the county attorney's statements that Officer Stuck was "standing there" with the tactical robot and "the blast did strike . . . Officer Stuck, not hurting him because of the tactical gear," when police reports actually reflect that Officer Stuck was standing about 25 yards away from the robot, and the pellets from the shotgun struck to "either side" of Churchich. Churchich maintains these statements during the factual basis "mislead [sic] and influenced the judge" and portrayed Churchich as "having a greater degree of criminal intent." Brief for appellant at 10.

Churchich made no objection to any statements made by the State at the plea hearing and is raising this issue for the first time on appeal. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013). When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as

a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Id*. Because Churchich did not object below, he has waived his right to assert prejudicial error on appeal.

Additionally, the factual basis given by the State was made prior to the court's acceptance of Churchich's pleas of no contest. "The Supreme Court has not attached any legal significance to the mere tender of a guilty plea, rather than acceptance by the court." *McHenry v. Nebraska Liquor Control Comm.*, 5 Neb. App. 95, 99-100, 555 N.W.2d 350, 353 (1996) (emphasis omitted). At the outset of the plea hearing, the court advised Churchich that he could withdraw his pleas of no contest and enter pleas of not guilty at any time prior to the court's acceptance of his pleas. Churchich neglected to do so. It was not until after the State recited the objectionable factual basis that the court accepted Churchich's pleas. The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. *State v. Trackwell*, 250 Neb. 46, 547 N.W.2d 471 (1996). A plea of no contest or guilty waives any claim of prosecutorial misconduct. See *State v. Thoi Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010). Churchich could have at any point objected to the State's factual basis or moved to withdraw his pleas of no contest prior to the court's acceptance of his pleas, and his failure to do so waived his right to challenge on appeal what he now asserts were objectionable statements by the State.

Anticipating our rejection of this claim, Churchich also argues that counsel provided ineffective assistance in failing to object. We address this claim further below in our opinion.

*Procedure Employed by Trial Court*
*at Plea Hearing.*

Churchich argues that the trial court violated Churchich's due process rights when it required him to enter his plea and waive his rights before hearing the factual basis provided by the State. Churchich further claims that the district court erred when it "accepted [Churchich's] plea of no contest and waiver of rights prior to hearing the factual basis, and then proceeding [sic] to make findings of fact after it prevented [Churchich] from making statements regarding the factual basis." Brief for appellant at 11.

It is true that before accepting a guilty plea, the trial court must determine whether a factual basis for the plea exists. See, *State v. Workman*, 22 Neb. App. 223, ___ N.W.2d ___ (2014); *State v. Cervantes*, 15 Neb. App. 457, 729 N.W.2d 686 (2007). However, Churchich's statement that the district court "accepted" Churchich's pleas of no contest prior to hearing the factual basis is a mischaracterization of the record; the trial court did not "accept" Churchich's pleas until after the State recited the factual basis. At the hearing, once the court granted the State leave to file the amended information, the court informed Churchich of his right to have the amended information served on him, his right to a 24-hour waiting period between service and arraignment, and his right to have the amended information read out loud. Churchich's counsel stated that Churchich would waive those rights. The court proceeded to ask Churchich how he pled to each of the three counts contained in the amended information. Churchich entered pleas of no contest to each count. This procedure is consistent with Neb. Rev. Stat. § 29-1816(1) (Cum. Supp. 2012), which provides in part:

The accused shall be arraigned by reading to him or her the indictment or information, unless the reading is waived by the accused when the nature of the charge is made known to him or her. The accused shall then be asked whether he or she is guilty or not guilty of the offense charged.

Once Churchich pled no contest to each of the three charges in the amended information, the court stated to Churchich, "[B]efore I can accept your pleas, I am going to have to ask you a number of other questions. You can still withdraw your plea until it is accepted by the Court and return to a plea of not guilty." The court then formally advised Churchich of all his statutory and constitutional rights, including the right to assistance of counsel, the right to confront witnesses, the right to a jury trial, and the privilege against self-incrimination. The court advised Churchich that a plea of no contest would waive those rights except his right to an attorney and right to appeal. The court explained to Churchich that if he were to proceed to trial, the State would have to prove beyond a reasonable doubt the elements of each charge, and explained to Churchich the elements for each charge contained in the amended information. The court informed Churchich that by entering pleas of no contest, he would be relieving the State of its trial burden, and that the State only had to provide a summary of the facts to the court that would support the charges. The court informed Churchich of the maximum and minimum sentences and penalties for each count, including the mandatory minimum sentence for the use of a deadly weapon charge, and informed Churchich that the penalties for each charge could be imposed consecutively. Churchich replied affirmatively that he understood the charges, the possible penalties, and what his rights were, and that he had discussed the case completely with his attorneys. He replied affirmatively that he was freely, voluntarily, and knowingly entering pleas of no contest and waiving his rights. The court then asked the State to provide the factual basis. It was not until after the State provided its factual basis that the court accepted Churchich's pleas of no contest and found him guilty of the three charges in the amended information.

When a defendant pleads guilty, he is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *State v. Bazer*, 276 Neb. 7, 751 N.W.2d 619 (2008). A plea of no contest is equivalent to a plea of guilty. *State v. Gonzalez-Faguaga*, 266 Neb. 72, 662 N.W.2d 581 (2003). To support a finding that a plea of guilty or nolo contendere has been voluntarily and intelligently made, the court must inform the defendant concerning (1) the nature of the charge; (2) the right to assistance of counsel; (3) the right to confront witnesses against the defendant; (4) the right to a jury trial; and (5) the privilege against self-incrimination, and examine the defendant to determine that he or she understands the foregoing. *State v. Lee*, 282 Neb. 652, 807 N.W.2d 96 (2011). Additionally, the record must establish that there is a factual basis for the plea and that the defendant knew the range of penalties for the crime with which he or she is charged. *Id*. The procedure employed by the district court complied with all the above requirements. At no point did Churchich request to withdraw his pleas of no contest, despite the court's advisement that he could withdraw his no contest pleas and plead not guilty prior to the court's acceptance of the no contest pleas. Upon our review of the record, we conclude that the procedures below did not violate Churchich's right to due process.

*Churchich's Convictions for Attempted First Degree Assault on Officer and Use of Deadly Weapon to Commit Felony.*

Churchich argues that the district court erred when it found him guilty of attempted first degree assault of an officer and use of a weapon to commit a felony, because there was evidence in the record indicating he lacked the requisite intent to commit these crimes. Churchich argues that "no weight was given to the facts that suggest [he] did not intend to harm the officers." Brief for appellant at 13. Churchich further argues he could not have formed the specific intent required by statute because he was intoxicated at the time and because a report from Dr. Kirk Newring opined that Churchich was suffering from a mental abnormality or defect which limited his ability to form the intent to commit the actions leading to his arrest and the charges.

As stated above, when a defendant pleads guilty, he is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *State v. Bazer, supra*. See, also, *State v. Gonzalez-Faguaga, supra* (plea of no contest is equivalent to plea of guilty). Essentially, Churchich argues that the factual basis was insufficient to support his pleas of no contest to attempted first degree assault on an officer and the use of a deadly weapon to commit a felony, suggesting that his plea was not voluntarily or intelligently made. See *State v. Lee, supra* (record must establish that there is factual basis for plea).

Pursuant to § 28-929(1), a person commits the offense of assault on an officer in the first degree if he or she "intentionally or knowingly causes serious bodily injury to a peace officer while such officer or employee is engaged in the performance of his or her official duties." The intent operative at the time of an action, as a state of mind, may be inferred from the words and acts of an accused and from the facts and circumstances surrounding the conduct. *State v. Beck*, 238 Neb. 449, 471 N.W.2d 128 (1991). A person is guilty of a criminal attempt if he or she "[i]ntentionally engages in conduct which would constitute the crime if the attendant circumstances were as he or she believes them to be," or "[i]ntentionally engages in conduct which, under the circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime." § 28-201(1).

In reviewing a plea of guilty, an appellate court need not rely solely upon the bill of exceptions, but may also consider matters contained in the defendant's presentence investigation (PSI) in determining whether there is a factual basis for the defendant's plea. *State v. Dean*, 237 Neb. 65, 464 N.W.2d 782 (1991). According to police reports contained in Churchich's PSI, police were dispatched to a residence in Bellevue following a report of shots fired. When Officers Brewer and Boyle arrived at the scene, they took cover behind a neighbor's pickup truck. Churchich shot his shotgun twice in rapid succession out the window of the basement of the residence, hitting the pickup truck behind which Officers Brewer and Boyle were taking cover. Churchich's shots were so close to the officers that Officer Brewer felt light debris falling on his hair, and Officer Boyle heard the shotgun rounds skipping off the pavement and striking the pickup truck behind which they were maintaining cover. After these shots were fired, Officer Brazda heard Churchich say "Fuck" or "Fuckers"--"I know where you are hiding" or "come out of hiding," indicating Churchich had knowledge of where the officers were when he fired, and was shooting at them. Additionally, Churchich texted his father, "The cops r here and its either

them or me." When Churchich was apprehended, he had blue paint writings on his body, one of which said "fuck Sarpy County Police." Churchich's intent to cause serious bodily injury to an officer engaged in the performance of his official duties can be inferred from the aforementioned words and conduct. See *State v. Beck, supra*.

While there may be conflicting evidence regarding Churchich's intent in the record, as discussed above, Churchich voluntarily and intelligently chose to enter pleas of no contest. The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. *State v. Start*, 239 Neb. 571, 477 N.W.2d 20 (1991). The only exceptions are for the defenses of insufficiency of the indictment, information, or complaint; ineffective assistance of counsel; and lack of jurisdiction. *Id*. Churchich waived his right to a jury trial and an opportunity for a jury to resolve any conflicts in the evidence. For the same reason, Churchich's arguments that (1) his intoxication at the time of the offense negated his intent to commit the crime, and (2) Dr. Newring's report (based upon an evaluation of Churchich made subsequent to Churchich's pleas of no contest) opining Churchich suffered from a mental abnormality or defect which limited his ability to form the intent, were also waived.

After reviewing the State's factual basis provided to the court, and the police reports and other evidence contained in Churchich's PSI, we conclude there was sufficient evidence in the record showing that Churchich possessed the requisite intent for attempted first degree assault on an officer. Because we find there was evidence supporting a finding that Churchich acted intentionally, his argument that he did not have the requisite intent for his use of a weapon to commit a felony conviction must also fail.

*Excessive Sentences.*

Churchich contends that his sentences are excessive. As a result of his pleas of no contest, Churchich was found guilty of attempted first degree assault on an officer, a Class II felony; attempted second degree assault on an officer, a Class III felony; and use of a firearm to commit a felony, a Class IC felony. Churchich was sentenced to 15 to 30 years' imprisonment for attempted first degree assault on an officer, 7 to 15 years' imprisonment for attempted second degree assault on an officer, and 5 to 15 years' imprisonment for use of a firearm to commit a felony. All sentences were ordered to be served consecutively. The court also ordered Churchich to pay restitution in the amount of $4,440.56 to the BPD. The court gave Churchich credit for 349 days spent in incarceration.

A Class II felony is punishable by 1 to 50 years' imprisonment. Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2012). A Class III felony is punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both. *Id*. A Class IC felony is punishable by a mandatory minimum of 5 years' and a maximum of 50 years' imprisonment. *Id*. All of Churchich's sentences were within the statutory range. And as noted above, an appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the

offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Carngbe*, 288 Neb. 347, 847 N.W.2d 302 (2014).

Churchich argues that his sentences were excessive because the court based its decision "upon false information regarding the nature of the offense and failed to properly consider mitigating evidence," referring to the county attorney's statements during the factual basis, and the circumstances surrounding Churchich's life. Brief for appellant at 18-19. In reviewing the record, however, it is clear that the trial court did properly consider the entirety of the PSI, including the circumstances of the crime as reported in police reports, and Churchich's mental illness. The court stated on the record that it had received the PSI and additional submissions that were sent in by Churchich, including an evaluation performed by Dr. Newring, a photograph, and letters of support on behalf of Churchich. The court stated in its order that it considered Churchich's age, mentality, education, experience, social and cultural background, past criminal record or record of law abiding conduct, and motivation for the offense, as well as the nature of the offense and amount of violence involved in the commission of the crime. Churchich, age 30 at the time of the present offense, has a long history of substance abuse, including the use of alcohol, methamphetamine, narcotic pain medicine, Xanax, and cocaine. Churchich's criminal history includes three minor in possession offenses (two for alcohol, one for tobacco). His first driving under the influence conviction was at age 16; his two subsequent driving under the influence convictions were in 2004 and 2007, and he has had several traffic infractions. While Churchich's PSI reflects that he completed substance abuse treatment in 2005, he "walked out" of another treatment program in 2007, at which point his probation was revoked. While released on bond in the instant case, under the condition that he complete an inpatient chemical dependency program, Churchich left the program and removed his electronic monitoring device.

In pronouncing the sentences, the court stated the following:

This was, obviously, an extremely serious event with extremely serious behavior. Lives were endangered. Lives could have been taken based on your actions.

The -- and for that reason and all the material I have, I have everything recommended to me from a maximum possible sentence, which is what some of the officers would like to see because they don't like being shot at and they don't want anybody who would do that to be out ever again, to family members of yours recommending probation, in essence, and probably not understanding that prison is mandatory with respect to one of these counts.

And so there's a lot of arguments to be made. I don't think that this was -- I think as a result, this case falls in between the two extremes. This -- the events were, in part, due to your mental illness and your mental conditions and--but that doesn't excuse it and that doesn't make it any less dangerous to those that were being shot at and those that were trying to get you under control.

So while there are things in the PSI and in all the materials that certainly cause the Court to a lower sentence from a maximum type sentence, which the Court would have had no problem imposing had the evidence shown that you were cold and calculated in doing the--in doing the things you did, it doesn't justify, I don't believe, either the type of blended sentence, for example, that [Churchich's counsel] has recommended here today.

- 10 -

It does require a serious sentence but not a sentence that would necessarily keep you in prison forever.

The court stated that while the sentences it ultimately imposed were "a long time," any lesser sentences would depreciate the seriousness of Churchich's conduct. The court further stated to Churchich, "[F]rankly, your behavior on -- in treatment programs has not been of the type that gives me a good feeling about you placed out at any time in the very near future." After our review of the record, we cannot say that the trial court abused its discretion in sentencing Churchich.

Churchich further argues that the court's sentences were excessive because the court imposed them consecutively. Trial courts have discretion to determine if a sentence will be served concurrently or consecutively. *State v. Berney*, 288 Neb. 377, 847 N.W.2d 732 (2014). The test of whether consecutive sentences may be imposed under two or more counts charging separate offenses, arising out of the same transaction or the same chain of events, is whether the offense charged in one count involves any different elements than an offense charged in another count and whether some additional evidence is required to prove one of the other offenses. *State v. Elliott*, 21 Neb. App. 962, 845 N.W.2d 612 (2014).

First, we note that under § 28-1205(3), the trial court was statutorily required to order Churchich's sentence for use of a deadly weapon to commit a felony to be served consecutively to any other sentence imposed. Churchich's convictions for attempted first degree assault on an officer and attempted second degree assault on an officer required different intents for each crime, and were based on separate instances of Churchich firing at separate individuals. We therefore find no abuse of discretion in imposing Churchich's sentences consecutively.

*Ineffective Assistance of Counsel.*

Churchich argues that he received ineffective assistance of counsel in two instances. First, Churchich claims trial counsel was ineffective for failing to object to the State's incorrect statements during the factual basis. Second, Churchich argues trial counsel was ineffective for failing to file a motion to withdraw his pleas of no contest after receiving Dr. Newring's report in which he opined that Churchich was suffering from a mental abnormality or defect which limited his ability to knowingly and intelligently form the intent to commit the actions leading to his arrest in the instant case.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). When a conviction is based upon a guilty plea or a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. McLeod*, 274 Neb. 566, 741 N.W.2d 664 (2007). An appellate court may address the two prongs of this test, deficient performance and prejudice, in either order. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013). If it is more appropriate to dispose of an ineffectiveness claim due to the lack of sufficient prejudice, that course should be followed. *Id.*

Regardless of the county attorney's statements that Churchich "did strike" Officer Stuck, Churchich could not have been prejudiced by trial counsel's failure to object to such statements. Churchich was charged with only two *attempted* assaults on an officer--one in the first degree and the other in the second degree; neither conviction required the State to show Churchich actually struck an officer. As we discussed above, the record (including the PSI) contains sufficient evidence to support a finding that Churchich intentionally attempted to cause bodily injury to Officers Boyle and Brewer, based on the surrounding circumstances; this was sufficient to support Churchich's conviction for attempted first degree assault on an officer. Attempted second degree assault on an officer only required that Churchich have acted "recklessly" with respect to the shot fired in the direction of Officer Stuck. See § 28-930. The PSI reflects that although Officer Stuck was about 25 yards away from the residence at the time Churchich shot at the police robot, his gun was pointed in Officer Stuck's direction and the pellets from Churchich's shotgun blast struck to "either side" of Officer Stuck, which certainly would rise to the level of being reckless. Thus, the evidence was sufficient to support Churchich's conviction for attempted second degree assault on an officer. Because there was sufficient evidence to support both of Churchich's convictions for attempted assaults on an officer, Churchich could not have been prejudiced by his trial counsel's failure to object to "incorrect" assertions made by the State during the factual basis.

To the extent that Churchich argues that the State's assertions portrayed him as being more culpable and therefore resulted in a harsher sentence, the court's statements at the sentencing hearing demonstrate that such was not the case. At the sentencing hearing, the court stated that it had reviewed the PSI, which contained all the police reports reflecting that Churchich did not actually strike any officer when he was shooting out of the basement window. Further, the court's statements on the record demonstrate that it was basing Churchich's sentences on the fact that "[l]ives could have been taken based on your actions" and that even though the incident was "due to your mental illness," that did not "make it any less dangerous to those that were being shot at." The court's sentences were well within the statutory limits and were not an abuse of discretion. We conclude that Churchich cannot show he was prejudiced by the State's statements during the factual basis and that therefore, trial counsel was not ineffective for failing to object to such statements.

In his second claim for ineffective assistance of counsel, Churchich argues trial counsel was ineffective for failing to file a motion to withdraw his pleas of no contest after receiving Dr. Newring's report, which opined that Churchich's ability to form intent was limited. The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013). The determining factor is whether the record is sufficient to adequately review the question. *Id.* An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.* We conclude that the record is insufficient to address Churchich's second claim for ineffective assistance of counsel, because it would require an evidentiary hearing to resolve why Churchich's counsel did not move to withdraw Churchich's pleas upon receipt of Dr. Newring's report.

## CONCLUSION

For the foregoing reasons, we affirm Churchich's convictions and sentences. We find no merit to Churchich's claim that trial counsel was ineffective for failing to object during the State's recitation of the factual basis for his pleas. We further find the record is insufficient to address Churchich's remaining claim for ineffective assistance of counsel.

AFFIRMED.